Please support my name is Martha Hall and I represent the appellant Miguel Vasquez. I would like to first go to the Fourth Amendment issues present in the case and particularly to the probable cause issue. You're not challenging, as I understand it, probable cause generally with regard to the Rico investigation. What you're focusing on is probable cause to search Mr. Vasquez's residence. That's right. There was probable cause aplenty for many of the 121 residents listed in the affidavit. However, there was probable cause lacking specifically as to Mr. Vasquez and probably as to other officers listed in the affidavit. Counsel, let me ask you about that. How is this any different from a drug trafficking conspiracy where there's ample probable cause to believe that there's a drug organization distributing drugs and we've got, I think, ample case law that says looking in the homes of the drug dealers is a reasonable place and we've approved any number of search warrants to do that. Here, as I understand it, the affidavit established a linkage to records custodians, which your client was alleged to be as an officer of one of the chapters, and that since there were no clubhouses for this particular outlaw motorcycle gang, the allegation was that the officers kept records of the organization's activities in their homes. What more do you think the Fourth Amendment requires? Quite a bit. I think Rubio, Brown, and Mendocino clearly lay out that when you have an organization that is not wholly illegitimate, your ---- I looked hard in this 95-page affidavit to find any legitimate thing that this organization did, Counsel. It seems to me the facts of this case are far stronger than the Hells Angels cases that we've previously looked at in our prior precedent. I would direct the Court, then, to page 22 of the affidavit. And the affidavit is in the ER, the third volume of the ER. Twenty-two. Of the affidavit. Right. I've got it. And I'm going, we're at paragraph 7, the fourth line down, in the middle of that line, it starts, in fact, as described below, some Mongols members who have been identified as officers are not directly implicated in any of the crimes specifically described herein. But as I read that allegation, Counsel, all that is saying is we don't have probable cause to arrest every single member of the Mongols as a racketeer under 1962. But the basis for this search warrant is to look for records memorializing the criminal activity. And that gets back to the comment I made earlier about records custodians keeping those records in their homes. That's the probable cause we're focusing on. Okay. Well, first of all, I believe that the Mongols is no different from the Hells Angels. There's absolutely no indication that the Mongols is different. There's no indication that the Mongols is more like the MA or drug distribution organizations. But the affidavit does indicate that based on their informants, the records contained evidence of illegal activities. So the records were evidence of a crime. So why isn't that enough? That was not one of the issues in the Hells Angel case. Right. That is an addition here. There are a couple of problems. First of all, there are no facts specific to Miguel Vasquez. There's no fact in the affidavit saying that he attended a particular meeting, that he was there when there were discussions about any criminal activity.  But you're arguing a link to establish probable cause that he's a racketeer. That's not the government's theory of this warrant counsel. The government's theory is he's a records custodian who holds minutes, books, and papers of an organization whose M.O. is to memorialize their criminal activity by keeping written minutes of their criminal exploits. No, my point is precisely that they did not present any facts to support the conclusion that Your Honor just stated. Well, they've got attributions to undercover agents, to informants who have all established elsewhere in the affidavit that these sorts of records were capped. And the question is, is that sufficient for the magistrate judge to conclude that because Mr. Vasquez was alleged to be an officer, was it the Hemet chapter of the Mongols? Right, right. He would be, in fact, as other officers of other chapters were shown to have been in the affidavit, a keeper of these kinds of criminal records. Right. And there's the point right there. I think you just made it. Because this affidavit and the government's argument supports searching Mr. Vasquez's home based on what other officers may have done. There is no evidence about what he did. So are you saying that it's insufficient for the magistrate to make an inference that because there's evidence that officers keep these criminal records and because there's evidence that Vasquez is an officer, then the magistrate could not make the inference that Vasquez had these criminal records? Is that the point you're making? Well, that is one of the points, is that one of the points is that that is an illegitimate inference, and that's based straight on Brown, Rubio, and Mendocino, that just because some members of this organization may have records does not allow us to draw the inference that Mr. Vasquez has the records. Are you saying that inference is not reasonable, or are you saying that there's a case that says whether it's reasonable or not, the magistrate's not able to make it or should not make it? Brown and Rubio say that the magistrate should not make that inference based on association, and that's what it boils down to. But it's not just association, counsel. It is an allegation that this enterprise conducted its affairs through a pattern of racketeering activity and that certain members of the organization, officers of each chapter, kept records that memorialized those criminal activities. And I'm having a hard time understanding why a magistrate couldn't make the inference that because Mr. Vasquez was an officer of the Hemet chapter that he would have such records as well. I would like to just respond quickly and then perhaps move on to some other issues if I could. I believe that Brown and Rubio both hold that information about a group's reputation as legally insufficient to support probable cause that a member of that group is involved in criminal activity. But you keep sliding from records custodian to racketeer. I want you to focus on the allegations of the affidavit that link the record custodians to the keeping of criminal records. Right, and the problem, the response to that is that they may have shown that there were officers or some officers who kept records, but that's not sufficient for the Fourth Amendment for them to then go and search Mr. Vasquez's home. Because to search Mr. Vasquez's home, they need to show something specific as to him, not just that some other officers may have been at a meeting where a crime was discussed and took notes, but that Mr. Vasquez, you know, has notes of criminal conduct, not just that he is an officer. Okay, I think we understand. If you want to cover some other issues, I think that's fine. Right, I would like to go to the Franks issue in this particular case, because that does sort of, if you think I'm slipping and sliding, I guess maybe the best thing is to slide into that Franks issue. You understand the distinction that I'm trying to make. I do understand the distinction. I still think there's a problem with the lack of facts. I understand the distinction. I understand your argument. I'm not necessarily in agreement with it, but it's clear what your position is. As to the Franks issue, I would like to address something that may not have been totally addressed in the briefing, and that is let's say we go with the government's argument that we redact President. Then we have just that Miguel Vasquez is an officer, but we don't have which office he holds. But does it matter? Yes, it does, because they provide different bases for searching the different officers. But as I read the affidavit, the affidavit essentially says that officers keep various types of records of the organization's activities. So does it really matter whether he was on the date that the warrant was obtained, the President, the Secretary-Treasurer, the Sergeant-at-Arms? Right. The Treasurer is alleged to keep financial documents about the regional chapter. There is no evidence anywhere that the Hemet chapter was involved in illegal conduct. Well, we're back to the same problem again. Other places in the affidavit say that the financial records were relevant because the organization engaged in the sale of narcotics, weapons, and other income-generating activity on behalf of the enterprise, and that the proceeds of those illegal sales were deposited in the organization's bank account. These are general claims without any specifics, without any facts. If we look at, for example, the Brown case. Well, there are allegations of people showing up at the, I don't know, the Mother chapter and paying cash to cover the cell phones and the chapter dues and all that sort of thing. Are there not? There are claims. There are conclusory, generalized claims that people go to the Mother chapter and pay dues. There's no- We have undercover informants who said, I went to the chapter and I paid the guy $200. What more does the affidavit need to say? I don't think the affidavit actually says that specific of facts, and that's one of the problems the affidavit presents, is that it doesn't have any facts from which a magistrate can draw the inferences. It just states conclusions. There's no- I'm sorry. Go ahead. Can I ask just a slightly different question that I was puzzled with? The government, in its briefing and in its declaration, indicates that it continues to believe that Mr. Vasquez was a president. And as I looked through the record, the only item that would cast a doubt on that was a declaration by Mr. Martinez, I believe his name is. Right. Is that right? I mean, so is that the only evidence that the government, I think the standard is intentionally or recklessly omitted or falsified information? How does that support that declaration? How does that make a strong showing of intentional or reckless falsification in the affidavit? I believe that it makes a strong showing of reckless falsification in conjunction with the fact that none of the voluminous reports that were presented by the government contained even the name Miguel Vasquez. There's no evidence that the government had in any of its reports any information to indicate that Miguel Vasquez existed, much less that he was president. They have a declaration which states, I was told he was the president, he dresses like the president, he acts like the president, he's the president. They were told by an unknown person at a bar. That's what their affidavit says. I was told by an unknown person at a bar. And did they have the information from Marty Martinez at the time that they prepared the affidavit? How does that support intentional or reckless falsification? I think it supports reckless falsification, and I think that the additional support of the recklessness of the agents is also proven by the fact that Mr. Vasquez was not the only one who was misidentified. We presented an affidavit to our investigator who contacted a number of the records custodians, and he was only able to contact eight of those people who were just records custodians, and they were misidentified. Either they were identified as being members of the wrong chapter, holding the wrong position. But that's not the test under Frank's, is it? Don't you have to show that at the time that Agent Ciccone, the case agent, signed the affidavit in support of the search warrant, he knew that information to be false? Not that he knew it. You could show that he recklessly included false information. So how do we get from your investigator's declaration that it was a mistake to the conclusion that Ciccone knew it or was reckless in not knowing? I just have to make enough of a showing to get the hearing. So what we're talking about now is not whether I have proved that it was a reckless statement, a recklessly false statement, but whether or not I made enough of a showing to get the hearing. And I believe, I mean, what else can I present to show that? Did you make a showing that Vasquez was not an officer at all? No. We conceded that he was the treasurer. We conceded that. Doesn't that end the inquiry then? No, it does not, because you can't go in and rewrite the affidavit. They can't take Mr. Vasquez's admission or concession to go back in and rewrite the affidavit, and that's the Baldwin case. Doesn't it make it simply an immaterial mistake in the affidavit? Thank you, Judge Romer. In determining whether or not it is material or immaterial, when you're claiming a false statement, you do not put in additional information. You redact, and then you reassess. You're not allowed under Baldwin to then put in the information that was correct or to put in additional information. But if we redact, which is what I guess Judge Cooper and then later Judge Nguyen did, then we're left with the allegation that Vasquez was an officer of the Hemet chapter, are we not? Right. And one of my questions is, if all you know is that he's an officer, then what's the finding of P.C.? Is the judge just supposed to say, well, it could have been one of those three reasons. It could have been either the reason that he was president or treasurer or sergeant of arms or some other position. You have no specific tie into a specific basis. But you go back to the other provisions in the affidavit that talk about the types of records that each type of officer kept. Right. But that's just it, Judge Tallman. Are you saying that the magistrate can say, I don't know what officer he is, but whatever officer he is, he's sure to have something. Well, in this 95-page affidavit, that's not an unreasonable conclusion to reach based on the showing as to the types of records each officer kept. I don't believe the Fourth Amendment allows that level of uncertainty and generalization. All right. Well, Counsel, you're out of time, so let's hear from the government. Thank you. Good morning. Asha Olivas on behalf of the United States. As the question from the panel shows, this court already understands the layout of the affidavit and the five-fold basis for probable cause that was established as for this specific defendant. First, the Mongols' gang was a criminal enterprise organized by a national mother chapter which controlled regional subchapters. Second, unlike many organizations, the Mongols kept extensive written documentation of their rules and activities. Third, the Mongols' officers were tasked with maintaining such documentation, which may Fourth, because the Mongols lacked clubhouses, the officers kept such documents in their residences. And fifth, the defendant was an officer of a Mongols' chapter. Again, as the court has already pointed out, the distinction between treasurer versus president is immaterial based on the ample probable cause that's laid out in this affidavit. Each section that precedes the reference to defendant's name, which is three times in this affidavit, each refers to facts specific to why an officer and thereby a records custodian would maintain such documents. And it was based on that reason that the magistrate court had substantial basis to infer that there was sufficient probable cause as to this particular defendant. If I understand Ms. Hall's argument correctly, there are three places in the affidavit in which Mr. Vasquez's name appears. And the only information I find when I look in those three places is his name and the fact that he is an officer and the address of the premises that the agents would like to search. Is there any other reference to Mr. Vasquez anywhere else? Indeed, the three references, the first being at page 445 of the excerpt of record. Right. That shows his house, the address of his house, his name, the fact that he's a records custodian. And I'm not sure I understand what the letters mean. And if I could explain, Your Honor, that is an important reference regarding specificity for why the agents believe that the particular premises would be currently linked to this defendant. Can you decode that? In the grid, A, D, and F refers to the three modes that the agents used to confirm that these addresses were, in fact, correct. If I could draw the Court's attention to page 436 of the excerpt of record, page 4 of the affidavit. All right. I'm on four. References to Miguel Vasquez are A, D, and F. A shows that the officers searched the California DMV records for driver's license and vehicle registration information. D, that surveillance of the locations to observe individuals' vehicles and activity was also conducted as to this particular defendant. Okay. That ties Vasquez to this address, as I understand it. Yes. Correct? Yes. Okay. But as I understand Ms. Hall's argument, they're not disputing the fact that this was his house. What they're saying is, where in the affidavit is Mr. Vasquez tied to illegal activity? Or is it just because of his status as an officer that he must be a records custodian of criminal records? To address the question first, it is specifically because of his status as an officer and thereby a records custodian. He is not alleged to have engaged in any other criminal activity beyond holding these documents, which was the purpose of the affidavit, to search his residence. And if I could, though, before we leave the point, just highlight two things on page 437. And that's F, that the third basis for confirming the residence was that they also reviewed prior investigations of the outlaw motorcycle gangs in the California area that have resulted in the development of intelligence regarding the identities of OMG officers. Meaning they had prior reports linking this particular person to the Mongols gang as being a member. And that they also reviewed prior police contacts of Mongols resulting in ascertainment of the addresses. And if I could also highlight, just while we're on the page, the footnote at the bottom. Footnote 1. It gives a specific time marker showing that these confirmations were made within two months of this affidavit being written. So it was, it wasn't necessary for the officers to say on September 1st we saw this particular defendant. There are specific references in the affidavit that shows that this information is current and reliable. To get to the second point, though, with regard to how it was known that this particular person was an officer. Specifically, if I could draw the court's attention to both pages 482 of the affidavit. And then we'll get to page 487. Okay, I'm with you on 482. 482, beginning on paragraph 18, under section B, Mongols, officers, records, custodians. It's explained that throughout the course of the investigation, the undercover officers, and again, this investigation was an extensive three and a half year investigation that included four undercover agents who infiltrated the Mongols gang and became themselves members of the Mongols and officers. In addition to CIs. And throughout the investigation, they collected chapter phone lists, rosters, names, and or monikers of individuals who hold officer positions within the Mongols. And it's important to note that it's not specified which of these specific activities were conducted in relation to this particular defendant. But all of this information was given to the magistrate court. And of course, it's reasonable to conclude that at least one of these surveillance techniques and information gathering techniques was applicable to the following list of people. It wasn't necessary to say each paragraph, each name, each paragraph, each name. Rather, here are the facts in detailed paragraphs, and then here are the names of the people that this was applicable to. And that's the way the affidavit was structured. The magistrate court understood that and found that there was probable cause. Judge Cooper reviewed it and found that there was probable cause aplenty. Judge Nguyen reviewed it and again agreed there was probable cause, and again confirmed that the issue with regards to the Franks hearing was immaterial. On page 53 of the affidavit, it states that the presidents are responsible for maintaining minutes, which may elsewhere we know includes records of illegal activities. But then it goes on to say other officers in a chapter may also have similar documents. And so although there's a specific statement that the presidents do maintain these documents, there's much less specificity regarding other officers. So if we agree with a defendant's counsel that in considering the affidavit we should redact the reference to that he was the president, that that was inaccurate, is it enough to infer or to have probable cause that he, that Mr. Vasquez, is going to have documents documenting illegal activities just based on this? They may also have similar documents. Your Honor, if I could also draw your attention to the other paragraphs. At page 53, paragraph 22, describes the role of the president. And then the sentence that you just referred to with other officers, that just goes to the point that other officers may also have similar documents. But the specific types of documents that each particular type of officer may also maintain is also detailed. If I could draw the Court's attention to paragraph 23 on the same page, 484, page 53 of the affidavit, that's where it goes on to explain the role of a secretary and treasurer, and that they, too, would be responsible for maintaining records on behalf of their chapter. And that those records, if I could go back to the top of the paragraph, might reference bank or cash accounts, records pertaining to the payment of dues and fines by members, financial records also reflecting the proceeds of illegal activities such as extortion, illegal gun sales, and so forth. And then if I could just draw the Court's attention to the next page, page 45 of the affidavit, excerpt of record, page 54. Again, at the top of the page, it's clearly discussed that the secretary and treasurer would also have meetings that may reflect criminal activity. It's stated expressly in that paragraph regarding treasurers and secretaries. But if we don't know what sort of officer he is, he could have been a vice president who is not given any express responsibility other than this may also. Right. The point is exactly as noted previously, that as an officer, he would be tasked with maintaining documents. And the specific designation as to which type of officer would not change the probable cause analysis here. And while we're actually on the point of secretary-treasurer- I'm sorry, I didn't understand that. Why is that? If some officers are identified as specifically maintaining a certain sort of document, but some officers are not, how do we get from this affidavit probable cause that a generic officer is likely to have documents that document illegal activities? I'm sorry, if I could back up then. Back to page 44 of the affidavit, and then going back to page 485. The four types of named officers in the search warrant are presidents, secretary-treasurers, vice presidents, and sergeant-at-arms. And here in these two pages of the affidavit, the types of documents that all four of those types of officers may maintain are here. And what's also important to consider, if I could draw the court's attention to page 486, page 55 of the affidavit, paragraph 24. Any and all of those officers may maintain minutes of the chapter meetings. And it's important to note that directives from the mother chapter about illegal or other activities would likely be included in those minutes, and that's detailed in the affidavit. Counsel, let me see if I can help my colleague here. I believe there's an allegation on ER 484 in paragraph 22, in the middle of that paragraph. It says other officers in a chapter, including the vice president, may also have similar documents, right after describing the list of documents. And so that was my question, which is, is this may also have similar documents sufficient to give probable cause that Vasquez has those documents, if we don't know what sort of officer he is? Yes. Because those similar documents would also be the types of illegal records that are at issue in detail. Right. I'm not asking about the documents. I'm asking about the may also have. Why is that sufficient for the magistrate to have probable cause? Well, the may also have similar documents with regard to vice presidents. It simply notes that because of the role of the vice president, he, too, would have similar documents. They may or may not. Because of his role, he may or may not have those documents, right? Isn't that the necessary implication of that sentence? I wouldn't read it that way, Your Honor. I would read it that other officers in a chapter, all of the other officers in the chapter, including vice presidents, being very similar to that of a president, may also have similar documents. But I don't think that that is necessarily meant to exclude a vice president as having records that may also contain these directives from the mother chapter. Okay. And if I could just highlight for the record, the court referenced dues being paid in the affidavit, and that is, in fact, a specific reference at page 64 of the affidavit, page 495, beginning at paragraph A. That is, in fact, in there, and the court was right to point that out. We do actually read this stuff. Okay. Anything further, counsel? I did want to highlight one other thing in the affidavit which specifies the timing with regard to how recently the records with regard to officers were kept. If I could point the court's attention to page 482 of the affidavit, 51, the very bottom paragraph. It is noted that while officers may change their positions, they typically keep them for at least one year, and for that reason, the agent relied on records that he had that were within a year for specifying the officer positions. So, again, an effort was made to be as accurate as possible in terms of what the time the affidavit was sworn. Was there anything in the record, I didn't see it in the affidavit, that Mr. Vasquez had held the position of president at one point? In other words, he'd held more than one title over the period of the three and a half years. There is no other reference in the affidavit that the government believed him to be anything other than the president at the time that the affidavit was sworn. So if he was the secretary-treasurer, the government didn't know it at the time? No. Unless the Court has any further questions, I'll conclude. Thank you very much, Counsel. Ms. Hall, you're out of time, but I'll give you a couple minutes on rebuttal. Just following up, there is no evidence that he, that the government presented that he may have held another office or that he ever held treasurer office, so that there's no other evidence that the magistrate could have looked at to refer back to any other office or any other basis to think that he had records in his home. So with that, unless there are any further questions, I'll submit. Thank you very much. The case just argued is submitted. I thank both counsel for your argument.
judges: Rymer, Tallman, Ikuta, Cjj